RENDERED: JUNE 16, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1482-MR

PHILLIP DEWAYNE GOFF, JR.                           APPELLANT

|   |   |
|---|---|
| v. | APPEAL FROM OHIO CIRCUIT COURT<br>HONORABLE THOMAS O. CASTLEN, SPECIAL JUDGE<br>ACTION NO. 17-CR-00052 |

COMMONWEALTH OF KENTUCKY                         APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, DIXON, AND JONES, JUDGES.

DIXON, JUDGE: Phillip Dewayne Goff, Jr., appeals the order of the Ohio Circuit Court, entered on October 19, 2021, revoking his probation. Following a careful review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In January 2017, Goff was indicted for possession of a controlled substance (methamphetamine) in the first degree, second offense;[1] possession of drug paraphernalia;[2] and possession of marijuana.[3]  Goff posted bond and was ordered to report to Pretrial Services.  In February 2017, the Commonwealth moved the trial court to revoke Goff's bond due to his failure to report to Pretrial Services.  When Goff failed to appear before the court, a bench warrant was issued.

In March 2017, Goff moved the trial court to enter a guilty plea.  In exchange, the Commonwealth offered to drop the charges for possession of drug paraphernalia and marijuana and recommend supervised probation for five years in lieu of imposing a prison sentence of three years for possession of methamphetamine.  The Commonwealth also proposed that Goff complete a substance abuse assessment and comply with its recommendations.  The court found Goff's plea was voluntary and that he was mentally competent.  It accepted the plea and entered a judgment of guilt of possession of methamphetamine.

In April 2017, a formal sentencing order was entered finding Goff eligible for probation.  The court recommended Goff receive substance abuse

---

[1]  Kentucky Revised Statutes (KRS) 218A.1415, a Class D felony.

[2]  KRS 218A.500(2), a Class A misdemeanor.

[3]  KRS 218A.1422, a Class B misdemeanor.

treatment but did not suggest mental health counseling. The order of probation/conditional discharge provided that Goff "shall be assessed by Joe Hitchell and comply fully with all recommendations." A substance abuse assessment signed by Hitchell was filed with the court recommending that Goff seek outpatient treatment for substance abuse and undergo a mental health evaluation. Additional terms of Goff's probation included no use or consumption of alcohol or non-prescription drugs and completion of outpatient substance abuse counseling.

In October 2017, Goff was admitted to Lincoln Trail Behavioral Health (Lincoln Trail) for addiction treatment, with no noted mental health issues. He was discharged in November 2017. In December 2017, Hitchell filed a substance abuse outpatient therapy compliance status form with the court. Although the form indicated Goff was "[c]ompliant, successfully completed treatment[,]" the notes indicate Goff "did not complete treatment, attendance, [Goff] stopped attending group."

In June 2018, Goff was again admitted to Lincoln Trail; however, he requested an early discharge due to a confrontation he instigated with another patient.

In November 2018, Goff's probation officer filed a violation of supervision report stating that Goff: (1) tested positive for/admitted to using

methamphetamine six times, marijuana three times, and alcohol one time while on probation; (2) failed to comply with his treatment plan for substance abuse; and (3) failed to report to his probation officer. The Commonwealth moved to revoke probation on these grounds.

In December 2018, a probation revocation hearing was held, and the court ordered that, in lieu of revocation, Goff would serve 60 days in jail "for his contemptuous behavior, to be probated upon [his] admission into Andrea's Mission for at least [12] months, including a combination of residential and outpatient treatment." In January 2019, because an "insurance issue" prevented him from entering Andrea's Mission, the court ordered Goff to enter Boulware Mission Center (Boulware), "where he shall remain, complete, and follow all aftercare recommendations . . . with mental health treatment at River Valley." Goff completed Boulware's outpatient program in February 2019.

On November 7, 2019, Goff's probation officer filed another violation of supervision report stating that Goff received a misdemeanor conviction for theft by unlawful taking under $500 and absconded. In September 2019, Goff was ordered to report to his probation officer on October 21, 2019, but no contact had been made as of the filing of the report. The Commonwealth again moved the trial court to revoke probation. Goff failed to appear at the hearing, and the court passed the motion until his arrest.

From May 20 through 29, 2021, Goff sought treatment from Lincoln Trail's adult chemical dependency unit. His medical records reflect a history of bipolar disorder, as well as major depressive disorder, recurrent and mild without psychosis. Goff again requested an early discharge.

Goff was arrested on June 9, 2021. In August 2021, his probation officer filed another violation of supervision report for an arrest that occurred in July 2021, resulting in felony and misdemeanor charges for possession of marijuana, buying/possessing drug paraphernalia, trafficking methamphetamine, possession of methamphetamine, and engaging in organized crime. The Commonwealth supplemented its previous probation revocation motion. A hearing was held in September 2021, and a revocation order was entered in October 2021. This appeal followed.

## STANDARD OF REVIEW

We review probation revocation orders for abuse of discretion. *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)). We reverse if we find "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). We "will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct

-5-

application of the facts to the law." *Blankenship v. Commonwealth*, 494 S.W.3d 506, 508 (Ky. App. 2015) (citation omitted).

KRS 439.3106 provides the criteria for revoking probation, stating:

(1) Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

Considering the applicability of this statute to revocation proceedings, the Supreme Court of Kentucky held:

We conclude that KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked.

*Andrews*, 448 S.W.3d at 780.

## LEGAL ANALYSIS

On appeal, Goff first argues the trial court erred when it failed to order a competency evaluation. KRS 504.100(1) provides, "If upon arraignment, or

during any stage of the proceedings, the court has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition."

The Supreme Court of Kentucky has held:

> A defendant is competent to stand trial if he "has a substantial capacity to comprehend the nature and consequences of the proceedings against him and to participate rationally in his defense." *Alley v. Commonwealth*, 160 S.W.3d 736, 739 (Ky. 2005) (citing *Commonwealth v. Strickland*, 375 S.W.2d 701 (Ky. 1964)). "A competency determination is based on the preponderance of the evidence standard." *Chapman v. Commonwealth*, 265 S.W.3d 156, 174 (Ky. 2007). We review a trial court's finding of competency for clear error and will reverse only if it is not supported by substantial evidence. *Id*.

*Jackson v. Commonwealth*, 319 S.W.3d 347, 349 (Ky. 2010). It has also held:

> The standard of appellate review of a trial court's competency decision is "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Turner v. Commonwealth*, 153 S.W.3d 823, 832 (Ky. 2005) (quoting *Thompson v. Commonwealth*, 56 S.W.3d 406, 408 (Ky. 2001)). **It is within the trial court's sound discretion to determine whether "reasonable grounds" exist to question competency**, though once such grounds do exist, a competency hearing is mandatory. *Gray v. Commonwealth*, 233 S.W.3d 715, 718 (Ky. 2007).

*Woolfolk v. Commonwealth*, 339 S.W.3d 411, 423 (Ky. 2011), *as corrected* (Apr. 27, 2011) (emphasis added).  Additionally, "before a trial court may *sua sponte* order a mental health evaluation of a defendant, 'the reasonable grounds must be called to the attention of the trial court by the defendant or must be so obvious that the trial court cannot fail to be aware of them.'"  *Jackson*, 319 S.W.3d at 350 (quoting *Via v. Commonwealth*, 522 S.W.2d 848, 849-50 (Ky. 1975)).

In the case herein, Goff's counsel specifically addressed the issue of competency when Goff entered his guilty plea, plainly asserting there were no reasonable grounds to question his competency, and the trial court found him to be competent.  The mental health section of the presentence investigation report noted, "Goff states that he has been diagnoised [sic] as having Bi-pololar [sic], Schitzophronic [sic], and Depression."[4]  It recommended Goff undergo substance abuse treatment but did not suggest mental health treatment.  Mental health treatment was neither required at sentencing nor in the court's probation order.

It was not until December of 2018 that Goff was ordered to attend a dual-diagnosis facility ***at his request***.  However, due to an "insurance issue," Goff was later ordered to attend two separate facilities to address his substance abuse and mental health issues.  At the September 2021 revocation proceeding, Goff's

---

[4]  The trial court pointed out that the record is devoid of any medical evidence that Goff suffers from schizophrenia.  All documentation regarding schizophrenia was self-reported by Goff.

counsel argued regarding the need for long-term, dual-diagnosis treatment but did not assert that Goff was incompetent, nor did the trial court *sua sponte* find "reasonable grounds" existed to question Goff's competency as specified by the Supreme Court of Kentucky in *Jackson*, 319 S.W.3d at 349. Given our review, we cannot say that the trial court "should have experienced doubt with respect to [Goff's] competency[.]" *Thompson*, 56 S.W.3d at 408.

The remainder of Goff's arguments stem from his assertion that the trial court erred in revoking his probation. However, the court made sufficient written findings as to the essential elements of KRS 439.3106 in its order, and it is clear from the record that the court followed *Andrews* and the statutory criteria set forth by KRS 439.3106 in revoking Goff's probation. The findings did not merely perfunctorily cite the statutory language in KRS 439.3106 but also included proof from the record established by a preponderance of the evidence as to how Goff violated the terms of his release and the statutory criteria for revocation. *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015). In the findings section of its order, the court explicitly stated it "**FINDS**, by a preponderance of the evidence" and listed 13 such findings. The fact the court mentioned "probable cause" in one of its enumerated findings did not transform its analysis into an improper one.

Proof that Goff violated the terms of his probation includes the fact that he – not once, but twice – failed to comply with the conditions of his probation in not completing and following appropriate treatment programs.[5] Although he was given at least four[6] opportunities for treatment, he completed two 30-day programs only to relapse into more drug-related probation violations. Significantly, "KRS 439.3106 permits, but does not require, a trial court to employ lesser sanctions[.]" *McClure v. Commonwealth*, 457 S.W.3d 728, 732 (Ky. App. 2015). In the case herein, the trial court attempted to employ lesser sanctions, including opportunities to seek treatment, but the lesser sanctions failed to end Goff's repeated violations of the conditions of his probation. Accordingly, the court did not err in refusing to modify Goff's conditions of probation to allow him to pursue further treatment.

Even if Goff were to provide excuses for why he failed to complete those programs, none can adequately explain why he failed to communicate with his probation officer from September 2019 until after his arrest in June of 2021. Goff also failed illegal drug/alcohol tests and/or admitted to using illegal

---

[5] In *Andrews*, the court was clear that a decision to revoke probation based solely on a single violation of the condition that a defendant remain drug-free will be deemed "an abuse of discretion under the new state of the law." *Andrews*, 448 S.W.3d at 780. The revocation in the case herein is not based on a single violation, nor did it constitute an abuse of discretion.

[6] This does not include the opportunity to attend Andrea's mission, which was made unavailable to Goff due to an "insurance issue."

drugs/alcohol on multiple occasions while on probation. He claims, although the trial court failed to specify the occasions, a number of those included incidents which were the subject of the contempt of court punishment in lieu of revocation. Ten incidents listed in the violation of supervision reports were considered when the trial court ordered that Goff attend Andrea's Mission; yet, the court was not precluded from considering those violations when determining whether to revoke probation. *See Andrews*, 448 S.W.3d at 780. Moreover, Goff also admitted to marijuana use when he was arrested in June 2021. Further, he was convicted of misdemeanor theft and later indicted for felony and misdemeanor drug-related charges.

It is well-established that "probation may be revoked any time before the expiration of the probationary period when the trial court is satisfied by a preponderance of the evidence presented in a revocation hearing that the probationer violated a condition of probation." *Barker v. Commonwealth*, 379 S.W.3d 116, 123 (Ky. 2012). Goff claims the trial court used the wrong standard in considering his most recent felony and misdemeanor indictment. However, as previously noted, the findings section of the order stated, the court "**FINDS**, by a preponderance of the evidence." The simple fact that the court later mentioned "probable cause" in its enumerated findings regarding the felony and misdemeanor indictment did not transform its analysis into an improper one.

Furthermore, while "new charges may form the basis for revocation proceedings, a conviction on those charges is not necessary in order to revoke probation." *Id.* Nevertheless, Goff pled guilty to the misdemeanor theft charge prior to the revocation hearing, clearly evincing a probation violation. Contrary to Goff's argument, it is of no consequence that the misdemeanor conviction was probated. *See Williams v. Commonwealth*, 462 S.W.3d 407, 410 (Ky. App. 2015); *Barker*, 379 S.W.3d at 123.

Goff further claims the trial court erred when it failed to inform him that he could testify at the revocation hearing with limited immunity without compromising his defense against his recent indictment. The judicial rule adopted in *Barker*, 379 S.W.3d at 128, "protects probationers who testify at revocation hearings when their testimony relates to new crimes." It also requires that the trial court "advise probationers that any testimony related to new crimes given during a revocation hearing cannot be substantively used in a future criminal proceeding" and "advise the probationer that the same testimony could be used in the later trial for impeachment or rebuttal in certain circumstances." *Id.* (footnotes omitted).

Like Barker, Goff "did not specifically request immunity or attempt to invoke his right against self-incrimination." *Id.* However, unlike Barker, Goff chose not to testify and does not assert that he would have testified had he been so advised. Instead, his brief merely claims, "this was conceivably because he was

afraid his testimony on the revocation violation based on his pending indictment could be used against him at a trial on the indicted charges." Therefore, as in *Barker*, "we cannot say that the fact that the trial court did not inform [Goff] that he could testify at his own probation revocation hearing with limited immunity affected his substantial rights or resulted in a manifest injustice." *Id.* at 129.

Goff's drug abuse fuels his criminal behavior, making him a significant danger to the community.[7] His failure to successfully complete and follow treatment, report to his probation officer, maintain sobriety, and follow the law demonstrates that he cannot be effectively managed in the community.

While a more thorough written analysis in the trial court's revocation order detailing the court's thought process and rationale may be desirable, it is not necessary as it is clear upon review of the order, probation revocation proceedings, and record that the court considered the proper requirements for revocation and did not abuse its discretion in so doing.[8] Thus, we must affirm the order revoking Goff's probation.

---

[7] Therefore, the case herein is factually and legally distinguishable from *Helms*, in which "there is a complete lack of evidence in the record that Helms is a danger . . . to the community and he cannot be appropriately managed in the community." *Helms*, 475 S.W.3d at 645. Helms was able to be managed effectively in his community for more than 18 months. By contrast, in the case herein, Goff could not comply with the terms of his probation for any appreciable period of time despite being given multiple chances.

[8] Like *Andrews*, the trial court in the case herein clearly considered a variety of factors and did not abuse its discretion. In *Andrews*:

# CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the

Ohio Circuit Court is AFFIRMED.


ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Vincent Aprile II
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Bryan D. Morrow
Assistant Attorney General
Frankfort, Kentucky

---

the trial court plainly considered a variety of factors, and specifically considered the criteria in KRS 439.3106. The trial court found that Andrews's recent drug use and past history strongly suggested that he was at great risk of reoffending and committing future drug crimes in the community. [] While Andrews's criminal history could not be the sole basis for his revocation, it was appropriately considered when assessing the risk posed by his continued probation. . . . In sum, although Andrews's situation was not clear-cut and another judge may have opted for a lesser sanction, the trial court's decision to revoke Andrews's probation was neither arbitrary nor unreasonable. The trial court acted within its discretion in revoking Andrews's probation under KRS 439.3106(1), and that decision will stand.

*Andrews*, 448 S.W.3d at 780-81.